[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13550
Non-Argument Calendar
_____

D.C. Docket No. 6:15-cr-00025-ACC-KRS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN DIPIRRO,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 18, 2016)

Before WILLIAM PRYOR, JULIE CARNES, and FAY Circuit Judges.

PER CURIAM:

Following a bench trial, Defendant Kevin Dipirro was found guilty of being a felon in possession of a firearm, pursuant to 18 U.S.C. § 922(g)(1).  The firearm was found after Defendant was pulled over for a violation of Florida Statute § 316.410 (not having a tail lamp illuminating the rear registration plate of his motorcycle).  Prior to trial, Defendant moved to suppress the evidence found during the traffic stop, on the grounds that the statute was void-for-vagueness and that the officer lacked probable cause[1] for the traffic stop.  After Defendant proffered the testimony of an expert, the Government moved to exclude the expert's testimony.  The district court granted the Government's motion, and later denied Defendant's motion to suppress.  On appeal, Defendant asserts that, because the expert would have directly undermined the credibility of the arresting officer, the district court abused its discretion by excluding the expert's testimony.  After careful review, we affirm.

## I.  BACKGROUND

On an evening in November 2014, Trooper Mitchell Henderson of the Florida Highway Patrol initiated a traffic stop of three motorcyclists, including one operated by Defendant, because the motorcycles did not have visible lights

---

[1]  Though Defendant only references probable cause, we note that a traffic stop is "constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with" *Terry v. Ohio*, 392 U.S. 1 (1968).  *See United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008).

2

illuminating their registration plates, in violation of Florida Statute § 316.410.[2] Trooper Henderson obtained Defendant's identification and later learned that he had a suspended driver's license and an active state warrant for his arrest. Defendant was placed under arrest, and admitted that he was in possession of a firearm. Law enforcement located a pistol containing six rounds of ammunition in Defendant's boot. Defendant later admitted that he was a convicted felon. A federal grand jury subsequently issued an indictment charging Defendant with being a felon in possession of a firearm, in violation of §§ 922(g)(1), 924(a)(2).

Defendant moved to suppress the evidence obtained during the traffic stop. He first argued that Florida Statute § 316.410, which provides in relevant part that a tail lamp "shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear," was void-for-vagueness because it left too much discretion to the officer regarding the meaning of "clearly legible." *See* Fla. Stat. § 316.410(2). Relying on a study from the University of Iowa, Defendant asserted that a motorcycle license plate was likely not legible from a distance of 50 feet. Finally, he argued that Trooper Henderson lacked probable cause to believe a traffic violation had

---

[2] The facts related to the initiation of the traffic stop are taken from the testimony at the suppression hearing, viewed in the light most favorable to the party that prevailed in that proceeding, which here is the Government. *See United States v. Bautista-Silva*, 567 F.3d 1266, 1271 (11th Cir. 2009); *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008). The facts related to the discovery of the firearm come from facts the parties stipulated to at the bench trial.

3

occurred because Defendant could establish that his tail lamp was illuminating his registration plate.

The Government subsequently filed a motion to exclude Defendant's proffered expert, Dr. Charles Johnson of the University of Iowa. Defendant proffered that the expert would testify that "only an extremely small percentage of humans would have the visual acuity/ability to read the alpha-numeric symbols on a Florida License plate at a distance of 50 feet to the rear at night." The Government asserted that this proposed testimony was not relevant to Defendant's vagueness argument. Moreover, the fact that a "small percentage of humans" could read the license plate at night from a distance of 50 feet undermined Defendant's argument that the license plate would not be legible under such circumstances. Given that Defendant's proffered expert would testify that a motorcycle license plate would be legible to some individuals, he could not show that § 316.410 was "grossly and flagrantly unconstitutional," and thus he was not entitled to suppression of the evidence on his vagueness challenge.

Defendant responded that the expert's testimony regarding the near impossibility of an illuminated Florida license plate being clearly legible at night from 50 feet away was relevant to whether § 316.410 was "grossly and flagrantly unconstitutional." He also maintained that the expert's testimony was relevant because this patent flaw went to the very essence of Trooper Henderson's reliance

4

on § 316.410's clearly legible standard for asserting probable cause to believe a traffic violation had occurred.

The district court granted the Government's motion to exclude the expert testimony, concluding that it would not decide the constitutionality issue because the exclusionary rule does not apply when an officer obtains evidence pursuant to a statute that is later found to be unconstitutional. To the extent Defendant also sought to argue that the statute was grossly and flagrantly unconstitutional, the district court rejected this argument because it was not presented in Defendant's initial motion to suppress and Defendant was not permitted to amend his suppression motion by way of a response to the Government's motion to exclude.

Defendant moved for reconsideration, and the district court denied his request. Following a suppression hearing, the district court denied Defendant's motion to suppress. Of relevance, the district court found Trooper Henderson's version of events credible and ultimately determined that he had probable cause to believe that a traffic violation had occurred. Defendant waived his right to a jury trial, and was found guilty at a bench trial based on facts stipulated to by the parties. This appeal followed.

## II. DISCUSSION

When reviewing the denial of a motion to suppress, we review the district court's legal conclusions *de novo*, and its findings of fact for clear error. *United*

5

*States v. Hollis*, 780 F.3d 1064, 1068 (11th Cir. 2015).  We review the district court's decision to exclude expert testimony for abuse of discretion.  *Id.*  However, we review an argument raised for the first time on appeal for plain error.  *United States v. Johnson*, 777 F.3d 1270, 1274 (11th Cir.  2015).

The Federal Rules of Evidence do not apply with full force at suppression hearings.  Fed. R. Evid. 104(a), 1101(d); *see also United States v. Matlock*, 415 U.S. 164, 175 (1974).  The Supreme Court has further explained that in proceedings where the district court is considering the admissibility of evidence, it should receive the evidence and give it such weight as the court's experience and judgment counsel.  *Matlock*, 415 U.S. at 175.

Defendant argues on appeal that the district court abused its discretion by excluding the expert testimony because it would have directly undermined Trooper Henderson's credibility as to whether he had probable cause to believe a traffic violation had occurred.  The Government asserts that we should review this argument for plain error because Defendant never offered the expert's testimony for the purpose of undermining Trooper Henderson's credibility, but had instead offered the expert's testimony to call into question the constitutionality of § 316.410.  In his response to the Government's motion to exclude, Defendant asserted that the expert's testimony—regarding the near impossibility that an illuminated Florida motorcycle license plate would be clearly legible at night from

6

a distance of 50 feet—was relevant to the issue of whether § 316.410 is "grossly and flagrantly unconstitutional."[3]  However, Defendant also stated that the expert's testimony was relevant to determining whether Trooper Henderson had probable cause to believe a traffic violation had occurred.  Indeed, Defendant asserted at the suppression hearing that he was prejudiced by the exclusion of the expert because the expert's testimony would have enabled him to call into question the officer's credibility.  Though Defendant could have more artfully articulated that the expert's testimony would be relevant to evaluating Trooper Henderson's credibility, we need not determine whether Defendant sufficiently raised this argument because Defendant cannot prevail regardless of whether this argument is reviewed for plain error or abuse of discretion.

Trooper Henderson issued a citation to Defendant for violating § 316.410 because his motorcycle did not have a white light illuminating the registration plate.[4]  He also testified that he initiated a traffic stop of Defendant and the other motorcyclists because none of them had visible white lights on their registration

---

[3]  Both the Government and the district court addressed the expert's proffered testimony solely with respect to Defendant's constitutional argument.

[4]  Though neither of the parties mention it, we note that Trooper Henderson testified that Defendant violated § 416.310(2) because his motorcycle did not have a white light on the registration tag, so that he could read it, but the actual citation says that Defendant violated § 316.410(1) for "MOTORCYCLE TAILLAMPS – NO/IMPROPER, IMPROPER TAIL LAMP NO WHITE LIGHT UNABLE TO SEE TAG." While there is some discrepancy as to the correct subsection of the statute, Trooper Henderson's reason for initiating the stop is the same: no white light, so he could not see the tag.

plates and he told Defendant he was being stopped because his tail lamp did not have an illuminated white light, so Trooper Henderson could not read the plate. Thus, Defendant would have violated the statute by not having a light, regardless of whether Trooper Henderson could see or not see the registration plate from a distance of 50 feet away at night.  *See* Fla. Stat. § 316.410 ("(1) Every motorcycle . . . shall have at least one taillamp. . . . (2) Either a taillamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear.").

Moreover, Defendant proffered that the expert would testify that a Florida motorcycle license plate "would not be legible at night when illuminated with a white light at a distance of 50 feet to the rear for any human except fighter pilots who are known to possess a visual anomaly which enable them to see at night in ways that other humans cannot."  This testimony, however, would have had no bearing on Trooper's Henderson's reason for initiating the traffic stop, or whether Defendant's motorcycle had a white light in the first place.  *See Matlock*, 415 U.S. at 175; *cf. United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) ("Expert testimony not relevant to any issue in the case and which would not assist the jury had to be excluded.").  Because the expert's testimony was not relevant to assessing Trooper Henderson's credibility, the district court did not abuse its

8

discretion by excluding it.  *See United States v. Cross*, 928 F.2d 1030, 1049 (11th

Cir. 1991) ("A trial court has wide discretion in determining whether the exclude

expert testimony, and its action will be sustained on appeal unless 'manifestly

erroneous.'").

**AFFIRMED.**